Filed 7/26/16  P. v. Davis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D068558 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD260574) |
| KARIM P. DAVIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy R. Walsh, Judge.  Affirmed.

Susan L. Ferguson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew Mestman and Allison Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, the appellant, Karim P. Davis, burglarized several locked faculty offices in an academic building on the campus of the University of California San Diego

(UCSD).  Davis pleaded guilty to second degree burglary (Pen. Code,[1] § 459) in counts 1 and 3 of the information.  He also admitted resisting an officer (§ 148, subd. (a)(1)).  The remaining counts and allegations were dismissed.  Davis was sentenced to a determinate term of two years eight months.

Davis challenged the information under section 995.  He contended that the two counts of second degree burglary should have been charged as misdemeanors under Proposition 47, the Safe Neighborhoods and Schools Act (§§ 1170.18, 459.5; the Act).  The court denied his challenge principally in the basis that section 459.5[2] (shoplifting) applied to entries into commercial establishments during regular business hours and that the academic offices on the UCSD campus did not meet the definition of commercial establishment.

Davis appeals contending that all "commercial burglaries" involving losses of $950 or less must be charged as shoplifting.  He also argues the offices at UCSD are commercial establishments within the meaning of section 459.5.  Davis recognizes the

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

[2]     Section 459.5 provides:  "(a)  Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor, except that a person with one or more prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290 may be punished pursuant to subdivision (h) of Section 1170.  [¶] (b)  Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property."

2

facts presented at the preliminary hearing show the losses for count 1 are approximately $1,800. Thus Davis does not challenge the denial of reduction of count 1. Davis does contend that as to count 3, the amount of the loss appearing to be less than $950, the court erred in denying his challenge to the burglary count.

We will find the locked academic offices on the UCSD campus do not qualify as commercial establishments under section 459.5. Therefore, we will affirm the judgment.

STATEMENT OF FACTS

The facts of the offenses are only relevant to the extent they illuminate the amount of the loss, and the nature of the offices involved. The parties do not dispute the facts. As a matter of convenience we will adopt the statement of facts from the respondent's brief as an accurate summary.

On January 26, 2015 at approximately 5 :36 p.m., Claudia Pena was in her third floor office at the Calit building at UCSD when she observed an African-American male, identified as appellant, walk by her office window multiple times. When Pena exited her office to investigate, she heard what sounded like the opening and closing of drawers and cabinets. Pena called the police.

Officer Jose Juarez of the UCSD Police Department was dispatched to the building regarding a suspicious person who was wandering around and checking doors. Juarez entered a stairwell inside the building and observed appellant. After Officer Juarez said, "Hey," to appellant and told appellant, "Stop. Police. Get on the ground," appellant began running, and a chase ensued. Appellant exited the building and ran into a parking lot. When appellant attempted to duck behind cars, students in the parking lot

3

pointed appellant out to the officer. Appellant ran into a canyon. Officer Juarez's partner, Officer Arthur Castillo, took appellant into custody as appellant exited the eastern side of the canyon.

When Officer Castillo reached into appellant's pocket to retrieve his wallet, several credit cards, in other people's names, fell out. Officer Castillo returned the cards to appellant's pockets, then stepped away briefly. When he returned, appellant had thrown the credit cards into some shrubs. Appellant said he did not know if the cards were his. He additionally stated that his girlfriend was waiting in a car in a parking lot, and she was not involved.

Several officers and student workers searched the canyon. They located three laptop computers. One was found inside a backpack. Officer Castillo saw the name Terry Simas on an e-mail on one of the computers. He e-mailed Simas to see if she had lost a computer.

Two days later, Officer Castillo and Officer Larry Darwent returned to the canyon to see if they could find other items appellant may have dropped. Near where they had earlier located the backpack, the officers found a red wallet, two screwdrivers, and some gift cards.

Officers returned to the Calit building and observed that several offices had pry markings on the doors. The markings appeared to have been made by a flat-tipped instrument.

4

Detective Lucas Liu attempted to locate the owners of the credit and debit cards that police located. He spoke to Arianna Ramos who indicated that her card had been left on a desk at the library at UCSD.

Detective Michael Williams told Angelica Barrera that her office had been broken into. Ms. Barrera indicated she was missing several gift cards, cash, and a Bank of America Visa card. These items were in appellant's possession when he was taken into custody.[3]

Additionally, Detective Williams spoke to Robert Malmstrum who stated a laptop was missing from his office. His laptop was one of the computers found in the canyon. The laptop had been in his locked office.

Additionally, an Amazon Visa credit card, Wells Fargo debit card, and American Express debit card found on appellant belonged to Natalie Favorite. Ms. Favorite indicated these items had been inside her purse in a cabinet above her desk in the Structural Materials and Engineering Building.

Further, police located missing credit cards belonging to Lin Chen on appellant's person. One of the laptops found belonged to Tony Fountain who always kept his office at the Calit building locked and closed. Additionally, several items missing from Maria Sklover's closed and locked office were found in appellant's possession.

---

[3] This conduct gave rise to count 3 to which appellant pled guilty.

DISCUSSION

I

*GENERAL LEGAL PRINCIPLES*

In November 2014, the electorate approved the Act, which makes certain theft-related and drug-related offenses misdemeanors.  (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091 (*Rivera*).)  Among other things, the Act reduced certain types of forgeries identified in section 473, subdivision (b) to misdemeanors, including forgery by check under section 475, as long as the value of the check does not exceed $950.  (§ 473, subd. (b).)  The Act added section 459.5, which classifies shoplifting as a misdemeanor "where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950)."  (§ 459.5, subd. (a).)

The Act also created a new resentencing provision under which certain individuals may petition the superior court for a recall of sentence and request resentencing. (§ 1170.18, subd. (a).)  "A person who satisfies the criteria in section 1170.18 shall have his or her sentence recalled and be 'resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'  (§ 1170.18, subd. (b).)"  (*Rivera*, *supra*, 233 Cal.App.4th at p. 1092.)

"In interpreting a voter initiative, we apply the same principles that govern our construction of a statute."  (*People v. Lopez* (2005) 34 Cal.4th 1002, 1006.)  " 'In determining intent, we look first to the words themselves.  [Citations.]  When the language is clear and unambiguous, there is no need for construction.  [Citations.]  When

6

the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]' [Citation.] We also ' "refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." [Citation.]' [Citation.] 'Using these extrinsic aids, we "select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citation.]" (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1014.)

II

*COMMERCIAL ESTABLISHMENT*

Davis pled guilty to second degree burglary based on his act of entering UCSD campus offices to commit theft. The question presented is whether the circumstances of the offense entitle Davis to resentencing under the Act. The inquiry is one of statutory interpretation, which we review de novo. (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 919.)

Section 459.5 defines "shoplifting" as: (1) entry into a commercial establishment; (2) while that establishment is open during regular business hours; (3) with the intent to commit larceny; and (4) the value of the property that is taken or intended to be taken does not exceed $950. Davis contends count 3 should be reduced to shoplifting. As we

7

shall explain, the trial court did not err in refusing to resentence Davis's second degree burglary conviction as an academic office on a university campus is not a commercial establishment. Davis failed to carry his burden of showing that he was eligible for resentencing.

The trial court denied the petition finding that the university offices were not commercial establishments under the Act. Davis asserts the trial court erred because the plain language of section 459.5 and the legislative intent behind the Act compel the conclusion that a "commercial establishment" as used in the new shoplifting statute must be broadly construed to include an academic office, because UCSD is a business.

The Act does not define the term "commercial establishment." The People contend the offices in this case do not fit any definition of commercial establishment.

Focusing on the common definition of "shoplifting," the People contend an academic office is not a commercial establishment where items are on display for sale. (Black's Law Dict. (10th ed. 2014) p. 1590 [defining shoplifting as "[t]heft of merchandise from a store or business; specif., larceny of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use without paying the purchase price."].) The plain language of section 459.5 compels the conclusion that a university academic office is not a commercial establishment.

The court in *In re J.L* (2015) 242 Cal.App.4th 1108 discussed the definition of "commercial establishment" in the context of a minor stealing a cell phone from the high school locker of another student. (*Id*. at p. 1114.) The *J.L.* court affirmed the

8

adjudication of the minor for burglary, holding the location of the theft did not occur at a "commercial establishment" as contemplated by section 459.5. (*J.L., supra,* at p. 1114.) The *J.L.* court noted that the commonsense meaning of the term commercial establishment "is one that is primarily engaged in commerce, that is, the buying and selling of goods or services. That commonsense understanding accords with dictionary definitions and other legal sources. (Webster's 3d New Internat. Dict. (2002) p. 456 ['commercial' means 'occupied with or engaged in commerce' and 'commerce' means 'the exchange or buying and selling of commodities esp. on a large scale']; The Oxford English Reference Dict. (2d ed. 1996) p. 290 [defining 'commerce' as 'financial transactions, esp. the buying and selling of merchandise, on a large scale']; Black's Law Dict. (10th ed. 2014) p. 325 ['commercial' means '[o]f, relating to, or involving the buying and selling of goods; mercantile']; see also 37 C.F.R. § 258.2 [copyright regulation defining the term 'commercial establishment' as 'an establishment used for commercial purposes, such as bars, restaurants, private offices, fitness clubs, oil rigs, retail stores, banks and financial institutions, supermarkets, auto and boat dealerships, and other establishments with common business areas']; Gov. Code, § 65589.5, subd. (h)(2)(B) [defining 'neighborhood commercial' land use as 'small-scale general or specialty stores that furnish goods and services primarily to residents of the neighborhood']; *People v. Cochran* (2002) 28 Cal.4th 396, 404-405 [quoting dictionary definition of commerce, '[t]he buying and selling of goods, especially on a large scale,' in interpreting statutory phrase 'commercial purpose'].)" (*J.L., supra,* at p. 1114.)

9

Because "commercial" involves being engaged in commerce, including financial transactions, we conclude that the term "commercial establishment" does not include academic offices on a university campus.

While there may be places on a university campus that qualify as commercial establishments, we are not called upon in this case to explore such possibilities. Suffice that the record here shows that the offices entered were private, locked offices in an academic building. Under no stretch of the imagination could we construe such spaces as being a commercial establishment, open to the public during regular business hours (§ 459.5). Nor are we willing to accept the bald assertion in the appellant's briefing that all commercial burglaries with a loss under $950 constitute shoplifting. There is no authority for such proposition and nothing in section 459.5 or in Proposition 47 which supports such claim.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.